## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

Douglas J. Katich (DK 1664)
**Ansell Zaro Grimm & Aaron**
1500 Lawrence Avenue
Ocean, New Jersey  07712
(732) 922-1000

Attorney(s) for Plaintiff
**PACIFICHEALTH LABORATORIES, INC.**

_____
                           :

PACIFICHEALTH LABORATORIES,    :
 INC.,                                  :

                                  :     HONORABLE _____

           Plaintiff,           :

                                  :     CIVIL ACTION NO.:_____

vs.                              :

                                  :  **COMPLAINT AND DEMAND FOR JURY**

PAKET CORPORATION,            :

                                  :

           Defendant.         :
_____:

       Plaintiff PacificHealth Laboratories, Inc., for its complaint against Defendant Paket

Corporation alleges and states:

### THE PARTIES

      1.  Plaintiff PacificHealth Laboratories, Inc. ("PacificHealth") is a New Jersey

Corporation with its principal headquarters located at 100 Matawan Road, Suite 420, Matawan,

NJ  07747.   Plaintiff is a reputable health and sports product company.  One of Plaintiff's

products is Accel Gel, a concentrated carbohydrate protein gel used by endurance athletes during

exercise for additional energy.  Plaintiff's product is unique in that it has been shown to

outperform the leading sports gel by 13% by improving endurance.  Plaintiff's product is

primarily sold in sports specialty outlets such as Performance Bike, Road Runner Sports and
GNC.

2.   Defendant Paket Corporation is believed to be an Illinois Corporation with its
principal place of business located at 9165 S. Harbor Avenue, Chicago, IL  60617.  Paket is a
manufacturer and packager of various products, including food products.


## JURISDICTION AND VENUE

3.   This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.
§ 1332 (a), as this matter in controversy exceeds the sum of $ 75,000.00, exclusive of interest
and costs, and is between citizens of this New Jersey State and citizens of foreign states.  There
exists complete diversity amongst all parties.

4.    This Court has personal jurisdiction over the Defendants because, among other
things, Defendant is doing business in this State, has transacted business in this State, has
committed tortious acts in this State, and has committed intentional tortious acts outside this
State which were expressly aimed at this State and as to which Plaintiff has felt the brunt of harm
caused by such tortious acts in this State.

5.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and 28 U.S.C.
§ 1391(c), because the events or omissions giving rise to Plaintiff's claims as hereinafter detailed
occurred in this judicial district, and the Defendant is deemed a resident of this judicial district
and is subject to this Court's personal jurisdiction.

## NATURE OF THE ACTION

6.    This is an action to recover compensatory, punitive and treble damages arising
from Paket's tortious conduct, negligence and breach of contract in the manufacture and

packaging of Plaintiff's product, which caused Plaintiff's product to become contaminated and unmarketable.

## RELEVANT FACTS

## BACKGROUND

7.      In or about early 2004, Plaintiff entered into a contract with Defendant for the manufacture and packaging of Plaintiff's specialty sports product, Accel Gel.  Plaintiff chose Defendant to manufacture and package its product because of Defendant Paket's representations of its longstanding quality service to its clients.

8.      Plaintiff also chose Defendant to manufacture and package its product because of Defendant Paket's representation that it had a separate FDA-approved processing facility;  this was of particular importance because, as a co-packer, Defendant would be responsible for ordering the raw ingredients for the product and maintaining the integrity of the raw ingredients from the time they are shipped to the time the manufacturing process is released, checked for quality assurance, and shipped to Plaintiff's distribution warehouse.

9.   In addition, Plaintiff, which works with an outside formulator to create its product, further confirmed Defendant's capability for the job by ensuring that the outside formulator visited Defendant Paket's facilities to ensure that Defendant had the capacity to manufacture the product to Plaintiff's specifications.

10.    In addition to FDA GMP (Good Manufacturing Practice) guidelines, which regulate the manufacture of food products, Plaintiff had also established its own specific quality assurance procedures to assure that no product was released until it met specific microbiological standards.  Plaintiff's quality assurance procedure was a part of its contract with Defendant.

11.     Defendant began manufacturing and packaging Plaintiff's product in or about March 2004.  In April 2004, Plaintiff introduced its product into the marketplace.

12.     Between April 2004 and May 2004, Plaintiff placed multiple orders with Defendant for Accel Gel.  The orders represented approximately 14,000 cases of the various flavors.

13.     In the ensuing twelve (12) months, Defendant continued to manufacture and package Plaintiff's product without incident.

14.     In May 2005, however, Plaintiff found and rejected several lots from Defendant because they did not meet Plaintiff's yeast specifications.  Further investigation, including a test performed by Defendant's independent testing facility, showed that the product had acceptable levels of yeast prior to going to packaging;  this result indicated to Plaintiff that the contamination took place when the product encountered Defendant's packaging equipment.

15.     Plaintiff's principals, Dr. Robert Portman, President, and Steve Kuchen, CFO, discussed the problem with Defendant Paket's principal, Mark O'Malley, who denied Defendant's responsibility for the problem, and blamed the ingredients in Plaintiff's product.  Shortly thereafter, however, the manufacturer notified Plaintiff that a transfer pump in Defendant's facility was contaminated with yeast.  Defendant purchased a new pump and processing of Plaintiff's product continued for the next three months without incident.  It is important to note, also, that, even if the problem had been with Plaintiff's ingredients, under the GMP guidelines, the responsibility still lies with the manufacturer.

16.     In July 2005, Defendant Paket hired an independent company to assess its facility.  The report of the independent company showed that Defendant Paket had failed to take the necessary steps to clean its equipment and prevent yeast growth.

17.     In August 2005, Plaintiff received reports that its product was expanding in the packets, a preliminary indication of bacterial or yeast infection.  Plaintiff immediately contacted

4

Defendant's principal, Mark O'Malley, who, once again, denied responsibility on the part of Defendant and blamed Plaintiff's product for the yeast growth.  At this point, Defendant had manufactured and packaged 14,000 cases of good product with no formulation or processing changes over a period of over a year.

18.     Plaintiff terminated its relationship with Defendant and is using another facility for the manufacture and packaging of its product.  The failure of Defendant to address the yeast contamination problem caused Plaintiff significant damages in lost sales, product recall, damage to the product name and the cost of switching facilities.  One of Plaintiff's largest accounts, Road Runner, discontinued the product due to the contamination problems.

19.     Plaintiff has lost valuable time and money in positioning their new product, Accel Gel, in the specialty sports product market.

20.     Defendant has demanded payment of $ 173,000.00 for manufacturing and packaging costs, which includes those batches of Plaintiff's product that were contaminated. Plaintiff refuses to pay this invoice due to Defendant's breach, negligent manufacturing and misrepresentation of the compliance of its facilities and curative costs associated with the yeast-contaminated product.

## COUNT I

### (BREACH OF CONTRACT)

21.      Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 20 of this Complaint as if fully set forth herein.

22.     In or about early 2004, the parties entered into an Agreement to produce and market Accel Gel, whereby PacificHealth supplied the Accel Gel formula and trademark, trade

5

dress and an extensive marketing background in the health and sports product marketplace and Paket would manufacture and package Accel Gel and deliver the finished product back to Plaintiff for distribution under Plaintiff's trademark and trade dress packaging.  Under the terms of the parties' Agreement, Paket promised and represented that it would manufacture and package Accel Gel in its FDA-approved facility and deliver the finished products to Plaintiff in accordance with Plaintiff's compliance requirements and in accordance with FDA GMP guidelines.

23.    Plaintiff has lost valuable time and money in positioning their new product, Accel Gel, in the specialty sports product market.

24.    Defendant has demanded payment of $ 173,000.00 for manufacturing and packaging costs, which includes those batches of Plaintiff's product that were contaminated. Plaintiff refuses to pay this invoice due to Defendant's breach, negligent manufacturing and misrepresentation of the compliance of its facilities and curative costs associated with the yeast-contaminated product.

25.    Defendant materially breached and/or repudiated the parties' Agreement by failing to manufacture and deliver the product to Plaintiff pursuant to the Agreement, and by failing to correct the contamination despite substantial notice.

26.    As a direct and proximate result of Defendant's breach and/or repudiation of contract, Plaintiff has suffered and will continue to suffer substantial damages, the exact amount of which have yet to be determined.

27.    As a result of Defendant's breach and/or repudiation of contract, Plaintiff is entitled to recover damages in an amount to be determined, with interest thereon, and all costs and fees incurred as a result.

## COUNT II

## (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

28.     Plaintiff repeats and restates each of the allegations contained in Paragraphs 1 through 27 of this Complaint as if fully set forth herein.

29.     In or about early 2004, the parties entered into an Agreement to produce and market Accel Gel, whereby PacificHealth supplied the Accel Gel formula and trademark, trade dress and an extensive marketing background in the health and sports product marketplace and Paket would manufacture and package Accel Gel and deliver the finished product back to Plaintiff for distribution under Plaintiff's trademark and trade dress packaging.  Under the terms of the parties' Agreement, Paket promised and represented that it would manufacture and package Accel Gel in its FDA-approved facility and deliver the finished products to Plaintiff in accordance with Plaintiff's compliance requirements and in accordance with FDA GMP guidelines.

30.     In every contract there exists an implied covenant of good faith and fair dealing which is an implied agreement that neither party to the contract will do anything to destroy or injure the right of the other party to receive the fruits of the contract.

31.     The implied covenant of good faith and fair dealing obligates both parties to deal with each other in good faith, including in the performance of the contract.

32.     By their conduct, in materially breaching the terms of the contract by allowing contamination to Plaintiff's product to occur during the manufacturing and packaging processes in its facility, and by failing to correct same upon substantial notice, Defendant breached the implied covenant of good faith and fair dealing.

7

33.     As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered and continues to suffer substantial damages, the exact amount of which have yet to be determined.

34.     As a result of Defendant's breach of implied covenant of good faith and fair dealing, Plaintiff is entitled to recover damages in an amount to be determined, with interest thereon, and all costs and fees incurred as a result.

## COUNT III

### (MALICIOUS MISREPRESENTATION)

35.     Plaintiff repeats and restates each of the allegations contained in Paragraphs 1 through 34 of this Complaint as if fully set forth herein.

36.     Defendant made clear and definite promises, representations and assurances to Plaintiff that: 1) Defendant's manufacturing and packaging facility was an FDA-approved facility; 2) that Defendant would manufacture and package Plaintiff's product in accordance with Plaintiff's specific compliance standards, which required, among other things, that the product be uncontaminated by yeast; and 3) that Defendant was in compliance with FDA GMP guidelines.

37.     Defendant willfully and maliciously made the false representations referred to in the preceding paragraph 36 (a) with knowledge that the statements were untrue, or omitted material facts necessary to make the statements not misleading; and (b) with the intent that Plaintiff would rely on these false representations.

38.     As a direct and proximate result of Defendant's fraudulent conduct, Plaintiff has suffered and continues to suffer substantial damages, the exact amount of which have yet to be determined.

8

39.     As a result of Defendant's fraudulent conduct, Plaintiff is entitled to recover compensatory and punitive or exemplary damages in an amount to be determined, with interest thereon, and all costs and fees incurred as a result, including reasonable attorney's fees.

## COUNT IV

## (NEGLIGENT MISREPRESENTATION)

40.     Plaintiff repeats and restates each of the allegations contained in Paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41.     Defendant, in the course of its business, and without exercising reasonable care, negligently misrepresented to Plaintiff the following: 1) Defendant's manufacturing and packaging facility was an FDA-approved facility; 2) that Defendant would manufacture and package Plaintiff's product in accordance with Plaintiff's specific compliance standards, which required, among other things, that the product be uncontaminated by yeast; and 3) that Defendant was in compliance with FDA GMP guidelines.

42.     Plaintiff was a reasonably foreseeable recipient of such false information.

43.     Plaintiff reasonably relied upon Defendant's negligent misrepresentations.

44.     As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff has suffered and continues to suffer substantial damages, the exact amount of which have yet to be determined.

45.     As a result of Defendant's negligent misrepresentations, Plaintiff is entitled to recover damages in an amount to be determined, with interest thereon, and all costs and fees incurred as a result.

9

## COUNT V

## (NEGLIGENCE)

46.     Plaintiff repeats and restates each of the allegations contained in Paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47.     Defendant, in the course of its business, and without exercising reasonable care, owed a duty to Plaintiff to undertake the following: 1) manufacture and package Accel Gel for distribution by Plaintiff in specialty sports outlets in accordance with Plaintiff's compliance standards, which required product to be uncontaminated by yeast; 2) manufacture and package Accel Gel for distribution by Plaintiff in specialty sports outlets in accordance with FDA GMP guidelines, which required Defendant to maintain the integrity of the raw ingredients and process the product without contamination.

48.     Defendant breached its duties to Plaintiff.

49.     As a direct and proximate result of Defendant's negligence, Plaintiff has suffered and continues to suffer substantial damages, the exact amount of which have yet to be determined.

50.     As a result of Defendant's negligence, Plaintiff is entitled to recover damages in an amount to be determined, with interest thereon, and all costs and fees incurred as a result.

## COUNT VI

## (CONSUMER FRAUD - *N.J.S.A.* 56:8-1, et seq.)

51.     Plaintiff repeats and restates each of the allegations contained in Paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52.     Defendant Paket used and employed unconscionable commercial practices, deception, fraud, false pretenses, false promises and misrepresentations in connection with the sale of its manufacturing and packaging services of Plaintiff's product.

53.     Defendant Paket knowingly misrepresented material facts with the intent that Plaintiff rely upon such misrepresentation in connection with the sale of its manufacturing and packaging services of Plaintiff's product by failing to remedy the contamination problems at its facility despite substantial notice.

54.     Defendant Paket violated the New Jersey Consumer Fraud Act, pursuant to N.J.S.A. 56:8-1, *et seq.*, by participating in fraudulent and unconscionable commercial practices.

55.     As a result of the fraudulent and unconscionable commercial practices of Defendant Paket, Plaintiff has suffered ascertainable losses of monies.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

1.     Compensatory damages in an amount to be proven at trial;

2.     Treble damages on account of Paket's unconscionable commercial practices in violation of N.J.S.A. 56:8-1, *et seq.*;

3.     Reasonable costs and attorneys' fees pursuant to N.J.S.A. 56:8-19;

4.     The costs of this action, and reasonable attorneys' fees; and

5.     Such other and further relief as the Court may deem just and proper.

11

## JURY DEMAND

Pursuant to FRCP 38(b), PacificHealth Laboratories, Inc., through its counsel, hereby demands a trial by jury of all triable issues.

Respectfully submitted,

/s/ Douglas J. Katich

_____
Douglas J. Katich (DK1664)
Ansell Zaro Grimm & Aaron, P.C.
1500 Lawrence Avenue
Ocean, New Jersey  07712
Date:   February 3, 2006                    (732) 922-1000

12